1
2
3
4
5
6
7
8
9

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

10  TRI-DAM,                                    1:11-cv-2138-AWI-SMS

11          Plaintiff,

12                                              **ORDER DENYING PLAINTIFF'S
    v.                                          MOTION FOR SUMMARY
13                                              JUDGMENT**

14  ANDREANA MICHAEL,

15          Defendant.                          (Doc. 26)

16  _____/

17

18                              **I. INTRODUCTION**

19

20       On August 23, 2013, Plaintiff, Tri-Dam, filed a motion for summary judgment pursuant

21  to Federal Rule of Civil Procedure 56. On September 16, 2013, Defendant, Andreana Michael,

22  filed an opposition. On September 23, 2013, Plaintiff filed its reply. For the following reasons

23  Plaintiff's motion for summary judgment shall be denied.

24              **II. FACTS AND PROCEDURAL BACKGROUND**

25       Tri-Dam, a joint venture between the South San Joaquin Irrigation District and Oakdale

26  Irrigation District, owns and operates the Tulloch Hydroelectric Project No. 2067 located near

27  the city of Copperopolis, California, pursuant to a license issued by the Federal Energy

28  Regulatory Commission ("FERC"). Complaint at ¶¶ 3-4. The Tulloch Project boundary extends

approximately 1,619 acres and includes all the land within the 515-foot elevation contour surrounding the Tulloch Reservoir. Complaint at ¶ 5. FERC first granted Tri-Dam a license to operate the Tri-Dam Project on January 1, 1955, for a term ending December 31, 2004. Complaint at ¶ 8. Article 39 of the license granted Tri-Dam the authority to grant permission for use of lands within the Tulloch Project boundary without prior approval of FERC. Complaint at ¶ 8; Tulloch Reservoir Shoreline Management Plan, December 2002, ("SMP") at p. 1-1.

FERC requires that each licensee (Tri-Dam) obtain control of all lands needed for operation and maintenance of the project. FERC License at p. 35, 114 FERC ¶ 62, 162 (2006). Sixty-one percent of the land within the FERC Project Boundary is privately owned, twenty-six percent of the land is owned by the Oakdale and South San Joaquin Irrigation Districts and twelve percent is owned by either the state or federal governments. SMP at p. 6. Tri-Dam claims to have obtained a flowage easement for relating to Defendant's land within the FERC Project boundary in 1957. Plaintiff disputes whether the deed, creating the easement, granted by Joe Sanguinetti on May 9th, 1957 applies to their home at 194 Sanguinetti Court. Defendant's Response to Separate Statement of Undisputed Material Fact ("SSF"), Doc. 34 at ¶¶ 11-12. The easement to Oakdale and South San Joaquin Irrigation Districts, granted the following uses and purposes:

> (a) The right to permanently overflow, flood and cover [the FERC Project Boundary] land with flood, slack, or back water created by the erection and operation of the Tulloch Dam across the Stanislaus River;
> (b) The right to enter upon said land from time to time to clear, destroy, or dispose of any timber or other natural growth, any obstructions, accumulations, trash, filth and any other thing which would in any way interfere with the use of said reservoir, or the waters therein, or tend to render unsafe or unsanitary either the reservoir created by said dam or the margin thereof;
> (c) The right to ingress to and egress from said lands for the purposes aforesaid.

Request for Judicial Notice ("RJN"), Exhibit A, Conveyance of Easement, Doc. 27-1 at p. 4; SSF at ¶ 12; SMP at p. 6. This easement applied to nine parcels owned by Mr. Sanguinetti and described in a lengthy description of meets and bounds, all within the 515-foot elevation contour elevation of the Tulloch Reservoir. *Id.*

In 2002, Tri-Dam developed Tulloch Reservoir's current SMP[1] in anticipation of obtaining a new license for the Tulloch Project.  Observing the FERC license required Tri-Dam to obtain FERC approval for (1) actions that would in any way reduce the storage capacity of Tulloch Reservoir and (2) use of lands within the FERC Project Boundary, the SMP recognized there was considerable public interest for development of the Tulloch Reservoir shoreline and that some of this development could conceivably have only minor impacts on reservoir storage or project operations.  Accordingly, the SMP expressed Tri-Dam's need to approach FERC for general approval of minor development activities to facilitate such activities within the Project Boundary and avoid the need to obtain FERC approval for every individual development activity.

The SMP described the minor development activities for which Tri-Dam had requested FERC's approval. Such minor development activities include the erection of a retaining wall or construction of a dock. The SMP also outlined an "encroachment" permitting scheme through which parties could apply for – and Tri-Dam would issue – permits authorizing a particular use or facility within the FERC Project Boundary.  According to the SMP, all proposed development activities are subject to requirements of applying for and obtaining a Tri-Dam encroachment permit.

On December 23, 2002, Tri-Dam filed an application with FERC for a new license, pursuant to sections 4(e) and 15 of the Federal Power Act (FPA, 16 U.S.C §§ 791 et seq.), to continue operation and maintenance of the Tulloch Project; the SMP was included as an exhibit to the new license application.  On February 16, 2006, FERC issued a new license to Tri-Dam for a period of 39 years, 11 months subject to the terms and conditions of the FPA, which was incorporated into the license by reference.  (Between 2004 and 2006, Tri-Dam operated the Tulloch Project under an annual license pending the disposition of its new license application.) Article 411 of this license approves the SMP.  Article 413 gives Tri-Dam the authority to grant permission for certain uses and occupancies of project lands and waters, including non-

---

[1] The SMP was submitted by Tri-Dam with its license application in 2002 and remained in effect until FERC approved the revised Reservoir Management Plan as directed by the 2006 FERC license. FAC ¶ 11. Thus, the SMP was in effect at all times relevant to this action.

commercial piers, landings and boat docks, without prior FERC approval. Article 413 also imposes a continuing responsibility upon Tri-Dam to supervise and control the uses and occupancies for which it grants permission.  If a permitted use or occupancy violates any condition imposed by the license or by Tri-Dam, article 413 further gives Tri-Dam authority to take any lawful action necessary to correct the violation, including canceling the permission to use and occupy the project lands and waters and requiring the removal of any non-complying structures and facilities.

On April 13, 2005, Tri-Dam issued a permit to the previous owners of Defendant's property for construction of a retaining wall and dock. Decl. of Dan Pope, Doc. 30 at ¶ 12.

In 2010, Defendant purchased the real property at 194 Sanguinetti Court, Copperopolis, California ("Subject Property"), waterfront property located at Tulloch Reservoir, more particularly known as Calaveras County Assessor's Parcel No. 053-018-051. Decl. of Andreana Michael, Doc. 33-1 at ¶ 2. When Defendant took possession of the property a retaining wall was in place. Decl. of Andreana Michael at ¶ 3. Defendant had seen pictures of the property that depicted a dock but when she took possession of the property no dock existed. *Id.* Defendant's husband installed a dock that Defendant claims to be identical to the prior dock. *Id.*

Defendant did not seek a permit prior to construction of the new dock nor was one issued. Decl. of Dan Pope at ¶ 11. Tri-Dam claims that the retaining wall presently existing on Defendant's property is not the same size, shape or configuration as the wall approved in the 2005 permit. *Id.* at ¶ 12. The retaining wall on Defendant's property is constructed with its base at the 510-foot contour line; the high water level for the Tulloch Reservoir. Decl. of Dan Pope at ¶ 10; Decl. of Andreana Michael at ¶ 6. Defendant contends that she has never seen water close to or touching the retaining wall. Decl. of Andreana Michael at ¶ 6.

### III. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving

4

party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *see* Fed. R. Civ. P. 56(c)(1)(A). To overcome summary judgment, the opposing party must demonstrate a factual dispute that is both material, i.e. it affects the outcome of the claim under the governing law, *see Anderson,* 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987), and genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1436 (9th Cir.1987). In order to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (citation omitted).

A court ruling on a motion for summary judgment must construe all facts and inferences in the light most favorable to the non-moving party.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines,* 602 F.Supp. 1224, 1244–45 (E.D.Cal.1985), *aff'd,* 810 F.2d 898, 902 (9th Cir.1987).

## IV. DISCUSSION

Tri-Dam seeks an order enjoining Ms. Michael from maintaining the retaining wall and dock presently existing on her property. Tri-Dam articulates two bases for the granting of the requested injunctive relief on summary judgment. First, Tri-Dam asserts that its FERC license grants it regulatory authority over all of the land within the Project Boundary. It claims that this regulatory authority permits Tri-Dam to enforce the SMP independently of the flowage

1  easement. Second, Tri-Dam asserts that Ms. Michael's property is in violation of the flowage

2  easement.

3  **A. Tri-Dam's FERC license does not grant it any property rights over any property in the**

4  **Project Boundary.**

5      As this Court held in *Tri-Dam v. Keller* and *Tri-Dam v. Schediwy*, Tri-Dam's FERC

6  license imposes upon Tri-Dam a duty to comply with and enforce the terms of the FERC license

7  – including creation and enforcement of a SMP - but does not grant the Tri-Dam the property

8  rights to do so.[2] *Tri-Dam v. Schediwy,* 1:11-cv-1141-AWI-MJS, 2014 WL 897337 at *7 (E.D.

9  Cal. Mar. 6, 2014); *Tri-Dam v. Keller,* 1:11-cv-1304-AWI-SAB, 2013 WL 2474692 at *3 (E.D.

10 Cal. June 7, 2013). The mere inclusion of lands within a project boundary will not restrict

11 landowner uses, since such inclusion does not itself create or alter property rights. *See*, *e.g*.,

12 *PacifiCorp*, *order on rehearing*, 80 FERC ¶ 61,334, at 62,113 (1997). Rather, Tri–Dam's right to

13 enforce the SMP is restricted by the scope of Tri–Dam's property interest, in this case an

14 easement (which Defendant disputes), in the Subject Property. *Tri-Dam v. Schediwy*, 2014 WL

15 897337 at *9; *see PacifiCorp,* 80 FERC at ¶ 62,113.

16     Tri-Dam's first argument, that it has the right to enforce its SMP based on the FERC

17 license, is again rejected for the same reasons articulated in *Keller* and *Schediwy*.

18 **B. Plaintiff has not proven absence of disputed fact such that a jury could only find that the**

19 **retaining wall and/or dock on the Subject Property violate the easement.**

20     As discussed above, any action taken by Tri-Dam to enforce its SMP is valid only to the

21 extent that it is coextensive with its flowage easement.

22 *1.  Plaintiff has proven that there is no genuine dispute of material fact as to whether the*

23     *Sanguinetti Deed burdens the Subject Property.*

24

25

26 [2] A mechanism is provided for a licensee to obtain via eminent domain all of the property rights necessary to the
   construction, maintenance, or operation of any dam, reservoir, diversion structure, or the works appurtenant or
27 accessory thereto when such right could not be otherwise obtained by contract or pledge. Tri-Dam could attempt to
   exercise such a right to secure the property rights necessary to enforce its SMP provided that it first attempts to
28 obtain such rights by contract or pledge and such rights are necessary to the construction, maintenance, or operation
   of the dam or reservoir.

1    As a preliminary matter, Defendant alleges that Tri-Dam's flowage easement does not

2    burden her property. Defendant alleges that some of the evidence submitted by Plaintiff to

3    support the claim that the easement burdens the Subject Property is not properly before the court.

4    Specifically, Defendant alleges that the Preliminary Title Report - that Defendant has requested

5    that this Court take judicial notice of – is not suitable for judicial notice because it is not a public

6    record or otherwise beyond reasonable dispute. Defendant is correct that the privately-obtained

7    title report is not judicially noticeable. *Time Warner Entm't-Advance/Newhouse P'ship v.*

8    *Steadfast Orchard Park, L.P.,* 2008 WL 4350054 at *6 (C.D. Cal. Sept. 23, 2008) (A privately

9    obtained "title report document is not suitable for judicial notice as it is not a public record or

10   otherwise beyond reasonable dispute.").

11   In addition to seeking judicial notice of the preliminary title report, Defendant submitted

12   the report as Exhibit O to the Declaration of Thomas Marrs, indicating that it is a true and correct

13   copy of a document provided by Defendant during discovery. It is well settled that

14   unauthenticated documents cannot be considered on a motion for summary judgment. *Canada v.*

15   *Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987). However, the title report in question

16   was provided by Defendant to Plaintiff in discovery. Accordingly, it is presumed to be authentic

17   when offered against Defendant. *See Maljack Productions, Inc. v. GoodTimes Home Video*

18   *Corp.*, 81 F.3d 881, 889 at n. 12 (9th Cir. 1996). The court has reviewed the title report in

19   question. The title report does not indicate that the property is necessarily encumbered by the

20   Sanguinetti easement, only that the title insurer would except from the title insurance any

21   protection against "an easement for ingress, egress, reservoir and incidental purposes in the

22   document recorded November 18, 1957, in Book 112, Page 220, Calaveras County records."

23   Decl. of Thomas Marrs, Exhibit O, Doc. 29-15 at p. 6.[3] The Sanguinetti Deed, standing alone,

24   gives the Court only a recitation of meets and bounds. A recitation of meets and bounds without

25   production of documentation explaining that Defendant's land falls within the description is

26

27   _____
     [3] The title report makes specific reference to the fact that "the exceptions and exclusion are meant to provide [the
     purchaser] with notice of matter which are not covered under the terms of title insurance policy…" Decl. of Marrs,

28   Exhibit O at p 2. The title report does not indicate, as Plaintiff claims, "exceptions to Defendant's title". Plaintiff's
     Reply at p. 7.

1    inadequate to prove to this Court that the Subject Property is burdened by the easement. Plaintiff

2    further proffers deposition testimony from Defendant's husband indicating his awareness that the

3    Subject Property is burdened by the easement. Although any one of the documents, standing

4    alone, may be inadequate to prove the non-existence of a genuine issue of material fact, taken

5    together no reasonable trier of fact could find that the Sanguinetti Deed did not burden the

6    Subject Property.

7         Plaintiff's proffered evidence is such that no reasonable jury could to make the

8    determination that the Subject Property is not burdened by the easement.

9         In an effort to show a genuine dispute as to whether the easement burdens her land,

10   Defendant relies on the facts that 1) the Sanguinetti Deed does not contain a description by street

11   address or Assessor's Parcel Number ("APN"), and 2) her deed does not contain reference to the

12   Sanguinetti easement.

13        Defendant is correct that the Sanguinetti Deed does not contain a description by street

14   address or APN. However, as Plaintiff points out, it comes as no surprise that the deed which

15   predated construction on the subject property does not contain street addresses or APNs. The

16   absence of street address and APN are by no means an indication that the easement does not

17   burden the Subject Property. Accordingly, Defendant's first assertion does not create a genuine

18   dispute of material fact. Defendant is also correct that her deed does not make reference to the

19   Sanguinetti easement. This fact in not in dispute but is also not material to this action.[4] Whether

20   Defendant's deed provided actual notice of the easement is not probative of whether the

21   easement burdens the Subject Property.

22

23

24

25

26   _____

27   [4] Plaintiff opposes Defendant's reliance on her grant deed on the grounds that it was not produced in discovery
     despite Plaintiff's request for production of all documents related to the purchase of the Subject Property. This Court
     is unable to determine what was produced in discovery but is able, based on a review of the deed, to make the

28   determination that its contents are not material to the issue before the Court; the Subject Property could be burdened
     by the easement regardless of what Defendant's deed reflects.

Defendant has failed to produce sufficient evidence overcome Plaintiff's proof of absence of a genuine dispute of material fact as to whether the Sanguinetti easement burdens the Subject Property.[5]

In any event, whether or not the easement burdens the Subject Property, there is genuine dispute of material fact as to whether Defendant's improvements violate Plaintiff's easement as discussed below.

2.  *Plaintiff has not proven that there is no genuine dispute of material fact as to whether the Dock and Retaining Wall violate the easement.*

The extent of an easement "is determined by the terms of the grant, or the nature of the enjoyment by which it was acquired." Cal. Civ. Code, §806. With an express easement, as in this case, the only interests that are transferred from the grantor to the grantee are the interests expressed in the grant and those necessarily incident to the interests. *Pasadena v. California-Michigan Land & Water Co*., 17 Cal.2d 576, 579 (1941). An easement, "unless it is ambiguous, must be construed by a consideration of its own terms. The meaning and intent thereof is a question of law …." *Gray v. McCormick*, 167 Cal. App. 4th 1019, 1024 (2008) (citation omitted).

The relevant text of the Sanguinetti Deed grants to Plaintiff "[t]he right to overflow the ... land, ... enter upon said land ... to clear, destroy, or dispose ... any *obstructions* ... and *any other thing* which would *in any way* interfere with the use of said reservoir, or the waters therein, or tend to render unsafe or unsanitary either the reservoir created by said dam or the margin thereof." RJN, Exhibit A, Doc. 27-1 at p. 4 (emphasis added). As discussed in *Tri-Dam v. Schediwy*, "[t]his language is onerous but unambiguous. Tri–Dam has the right to destroy, clear or dispose of anything that in any way interferes with Tri–Dam's use of the reservoir or with the waters [or that tends to render unsafe the reservoir]…. Accordingly, in order for Tri–Dam to prove a violation of its easement it must adduce some evidence that the encroachment

---

[5] This is consistent with this Court's prior findings that the Sanguinetti and Mitchell deeds granted express flowage easements for all of the land within the FERC Project Boundary. *See Tri-Dam v. Keller* 2013 WL 2474692; *Tri-Dam v. Yick*, 2013 WL 2474689.

1   complained of actually interferes with one of the aforementioned items." *Tri-Dam v. Schediwy*,

2   2014 WL 897337 at * 9-10.

3         Tri-Dam has consistently indicated that the Tulloch Reservoir has a normal maximum

4   water surface elevation of 510 feet. Decl. of Dan Pope at ¶ 10; *see Tri-Dam v. Schediwy*, 2014

5   WL 897337 at *9-10; *Tri-Dam v. Keller*, 2013 WL 2474692 at *1. Ms. Michael has indicated

6   that since she took possession of the property she has never seen the reservoir's waters touch the

7   retaining wall on the Subject Property. Decl. of Andreana Michael at ¶ 6. Plaintiff has submitted

8   nothing to contradict Defendant's assertion. In fact, all that Plaintiff has asserted to support the

9   claim that the retaining wall and dock violate the easement is conclusory assertion that "[t]here

10  can be no dispute that the retaining wall and dock at issue here, like any physical structure that

11  affects shore contour, interfere with use of the reservoir in some way."

12        In *Tri-Dam v. Schediwy* this Court, in granting summary judgment in favor of Tri-Dam,

13  indicated:

14              Tri–Dam has submitted undisputed evidence that indicates that the retaining wall
15              was built at or below the 506–foot contour line. Accordingly, the wall intrudes
                several feet below 510–foot contour level; the normal high water level of the
16              Tulloch Reservoir. In doing so, the [Defendants'] structure, in some way,
                interferes with the waters within the reservoir by displacing the normal flow of
17              the waters.

18
19  *Tri-Dam v. Schediwy*, 2014 WL 897337 at * 10. In *Schediwy*, Tri-Dam specifically argued that

20  "Defendants' wall intrudes *below* the normal high water level and therefore interferes with the

21  reservoir's storage capacity, albeit to a relatively small degree." *Tri-Dam v. Schediwy*, 1:11-cv-

22  1141-AWI-SMS, Plaintiff's Motion for Summary Judgment, Doc. 68 at p. 23 (emphasis added).

23  Here, the retaining wall is at the 510-foot contour level; the normal high water level.

24  Accordingly, it is not clear, as Plaintiff claims, whether the retaining wall interferes in any way

25  with use of the reservoir or its waters. There is a genuine dispute of material fact as to whether

26  the retaining wall in any interferes with the reservoir or its waters.

27        In *Tri-Dam v. Keller* this Court, in denying summary judgment, indicated:

28

                                                    10

> [I]t is not clear that the [Defendants'] dock improvements interfere with the
> safety, sanitation, or use of the Tulloch Reservoir or its margins…. Consequently,
> a genuine issue of material fact exists whether the scope of the easements grant
> Tri–Dam the right to remove the [Defendants'] dock improvements.

*Tri-Dam v. Keller*, 2013 WL 2474692 at * 4. Tri-Dam has presented nothing to this Court to distinguish the present case from *Keller*. In both instances Tri-Dam alleges that a violation has occurred because the dock was constructed below the 515-foot contour elevation without permit. In *Keller* this argument failed and the Court has been provided with no reason to depart from that ruling.

Tri-Dam further argues that the Michael dock should be removed because it tends to render unsafe the reservoir and impede navigation as evidence by the complaint submitted by an adjacent homeowner. The complaint, in relevant part, reads:

> [T]he entrance and exit orientation for boats and wave runners from this dock is
> gravely dangerous to swimmers and kayakers in our swimming area…. We are
> requesting a different orientation for that dock as there have been several close
> calls to anyone swimming and playing in the water at our place. If the dock were
> to be placed with the entrance and exit facing directly out into the lake it would
> make everything much safer.

Decl. of Dan Pope, Exhibit D, Doc. 30-4 at p. 2. Defendant does not dispute that the letter was submitted however she does appear to dispute the accuracy of the claim. In Defendant's opposition, she notes that the letter was authored over three years ago and that its primary complaint is the *orientation* of the dock. Doc. 33 at p. 8. Defendant also declares that she has "never been informed that the dock or wall on [her] property constitute a safety issue, except that [she] was made aware of the letter written three years ago by [her] neighbor which indicated that a chance (sic) in the dock's orientation could make it more safe." Decl. of Andreana Michael, Doc. 33-1 at ¶ 7. Further, Defendant declares that "[t]he dock and wall on [her] property do not interfere with the use of the reservoir or its waters, nor (sic) with Tri-Dam's ability to operate the dam and provide electricity, water and recreation." Decl. of Andreana Michael, Doc. 33-1 at ¶ 5. The letter submitted by Tri-Dam, standing alone, is inadequate to convince this Court that no reasonable jury could find that Defendant's dock in no way tended to render unsafe the reservoir or impair navigation. Accordingly, Plaintiff has failed to meet its burden on this question.

Since Plaintiff has failed to demonstrate that there is no genuine dispute of any material fact relating to whether Defendant's retaining wall and dock violate the Sanguinetti easement, summary judgment for Tri-Dam cannot be granted.

## V. ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1.  Plaintiff's Motion for Summary Judgment (Doc. 26) is DENIED.

2.  The case is referred to the Magistrate Judge for a trial-setting conference.

IT IS SO ORDERED.

Dated:   March 28, 2014                                    _____

                                        SENIOR  DISTRICT  JUDGE